## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LINDSAY M.,

        *Plaintiff,*

  vs.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

Case No. 2:21-cv-02063-EFM

## MEMORANDUM AND ORDER

Plaintiff Lindsay M. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying her application for disability insurance benefits ("SSDI") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").  Having reviewed the record, the Court reverses the Commissioner's final decision and remands this case for further proceedings consistent with this opinion.

---

[1] On July 9, 2021, Kilolo Kijakazi was named the Acting Commissioner of Social Security and has been automatically substituted as the defendant in this case.  *See* Fed. R. Civ. P. 25(d).

## I.      Factual and Procedural Background

On November 28, 2018, at the age of 35, Plaintiff applied for disability benefits alleging disability beginning on that date.[2]  Plaintiff alleges that she is unable to work due to multiple conditions, including Budd-Chiari 1 malformation syndrome,[3] for which she has undergone a suboccipital craniectomy for decompression, cervical spine laminectomy, and duraplasty; seizure disorder; chronic headaches; asthma; depression; attention deficit hyperactivity disorder ("ADHD"); post-traumatic stress disorder ("PTSD"); an anxiety disorder; Ehlers Danlos Syndrome ("EDS"); hypothyroidism; tremor; and sleep apnea.[4]

After two administrative denials, Plaintiff requested a hearing before the administrative law judge ("ALJ"), which was granted.  The hearing was held in June 2020, and both Plaintiff and a vocational expert testified.  In a decision dated July 17, 2020, the ALJ determined that Plaintiff's impairment or combination of impairments, while severe, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5]

---

[2] Plaintiff previously filed applications for disability benefits, which were denied in an ALJ decision dated August 23, 2018.  Plaintiff did not appeal that decision further.

[3] "Chiari malformations are structural defects in the base of the skull and cerebellum, the part of the brain that controls balance.  Normally the cerebellum and parts of the brain stem sit above an opening in the skull that allows the spinal cord to pass through it (called the foramen magnum).  When part of the cerebellum extends below the foramen magnum and into the upper spinal canal, it is called a Chiari malformation . . . .  The pressure on the cerebellum and brain stem may affect functions controlled by these areas and block the flow of cerebrospinal fluid (CSF)—the clear liquid that surrounds and cushions the brain and spinal cord."  Chiari Malformation Fact Sheet, National Institute of Neurological Disorders and Stroke,  https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Chiari-Malformation-Fact-Sheet#4 (last visited Feb. 9, 2022).

[4] Plaintiff alleged somewhat different conditions in her disability applications compared with her Complaint in this case; the Court has included here the conditions listed in both.  *Compare* SSA R., Doc. 10-6 at 257, *with* Doc. 1 ¶¶ 8-9.

[5] SSA R., Doc. 10-3 at 16-18.

The ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work . . . in that she can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  The claimant can never climb ladders, ropes or scaffolds.  She can occasionally tolerate exposure to extreme cold and to humidity.  She can never tolerate exposure to atmospheric conditions beyond a level found in an indoor work environment such as an office or retail store.  She can never tolerate exposure to unprotected moving mechanical parts or to unprotected heights.  She is able to carry out detailed but uninvolved instructions to perform simple, routine, and repetitive tasks; involving only simple work-related decisions; with few, if any, workplace changes.[6]

The ALJ then determined that Plaintiff was capable of performing past relevant work as a sales attendant and of making a successful adjustment to other work that exists in significant numbers in the national economy.[7]  Thus, the ALJ concluded that Plaintiff had not been under a disability from November 28, 2018 through the date of his decision.[8]

Plaintiff requested review of the ALJ's decision from the Appeals Council.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Having exhausted her administrative remedies, Plaintiff now seeks review of the ALJ's decision by this Court.

---

[6] *Id.* at 18.

[7] *Id.* at 24-26.

[8] *Id.* at 26.

## II.   Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[9]   The Court must therefore determine whether the Commissioner made factual findings that are supported by substantial evidence in the record and applied the correct legal standard to those factual findings.[10]  "Substantial evidence . . . is 'more than a scintilla.'"[11]   However, "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[12]   The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[13]   However, courts "also do not accept 'the findings of the commissioner' mechanically or affirm those findings 'by isolating facts and labeling them as substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.'"[14]  "Evidence is not substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion.'"[15]

---

[9] 42 U.S.C. § 405(g).

[10] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[12] *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

[13] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[14] *K.I. v. Kijakazi*, 2021 WL 4149087, at *1 (D. Kan. 2021) (alteration in original) (quoting *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012)).

[15] *Id.* (quoting *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005)).

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[16] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[17]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[18] The steps are designed to be followed in order.[19] If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[20]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals one of a designated list of impairments.[21] If the impairment does not meet or equal one of these designated impairments, the

---

[16] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d); *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

[17] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010) (citing *Barnhart*, 535 U.S. at 217-22); 20 C.F.R. § 416.920).

[18] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see* 20 C.F.R. § 404.1520(a)(4).

[19] *Barkley*, 2010 WL 3001753, at *2.

[20] *Id.; Lax*, 489 F.3d at 1084 (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)).

[21] *Lax*, 489 F.3d at 1084 (citations omitted).

ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[22]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[23]  The claimant bears the burden in steps one through four to prove an impairment or combination of impairments that prevents the performance of past relevant work.[24]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[25]

### III.   Analysis

At step two, the ALJ listed Chiari malformation, seizure disorder, headaches, asthma, depression, ADHD, and PTSD as Plaintiff's severe, medically determinable impairments.[26]  At step three, however, the ALJ found that Plaintiff has no impairment or combination of impairments that meets or medically equals the severity of any listed impairment.  Plaintiff argues that the ALJ erred in finding that Plaintiff's headaches, alone or in combination with her other impairments, do not meet or equal a listing at step 3 of the required sequential analysis; in failing to analyze

---

[22] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[23] *Id.* (citing *Williams*, 844 F.2d at 751).

[24] *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1171).

[25] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

[26] SSA R., Doc. 10-3 at 15.  The ALJ found that Plaintiff's EDS, hypothyroidism, sleep apnea, and degenerative disc disease in the lumbar spine to be non-severe because they did not cause more than a minimal functional limitation on her ability to work.  *Id.*

Plaintiff's headaches at a later step; in failing to consider how Plaintiff's headaches affect her RFC; and in finding that Plaintiff had the RFC to perform substantial gainful activity.  Plaintiff also contends that the Appeals Council erred in failing to review Plaintiff's headache disorder pursuant to Social Security Ruling ("SSR") 19-4p.

The Court summarizes below the relevant evidence before the ALJ regarding Plaintiff's headaches, then addresses the ALJ's step three determination.  Because the Court finds that remand is necessary at step three, it does not address the remainder of the errors alleged by Plaintiff.

**A.    Evidence Regarding Plaintiff's Headaches**

Plaintiff has suffered from headaches for much of her life due to her Chiari malformation. In an attempt to relieve her worsening headaches and numbness in her arms, hands, and feet, Plaintiff underwent a surgical decompression with suboccipital craniectomy, C1-C2 laminectomy, and duraplasty in June 2015.[27]  However, she continued to report worsening headaches immediately after that surgery and, as of July 2016, was still having recurrent, increasingly frequent episodes of lightheadedness, diffuse weakness, numbness, and heart-rate fluctuations.[28] Plaintiff was brought to Stormont Vail Hospital by ambulance for such symptoms on July 10, 2016, where she reported having chronic daily headaches and that her symptoms had not improved following surgical intervention.[29]  On March 16, 2017, Plaintiff reported to her physician that her symptoms had grown worse since surgery, that she was afraid to leave the house due to episodes

---

[27] SSA R., Doc. 10-8 at 415, 445.

[28] *Id.* at 464, 589.

[29] *Id.* at 588-89.

of body numbness and blackouts, and that she had been experiencing headache pain at the back of her head and eye for the last two days.[30]

Medical records from June 2017 again document Plaintiff's long history of persistent headaches, described as "dull and achy circumferentially around her head."[31]  At that time, Plaintiff reported that the headaches were present most of the time at a pain level of four to five out of ten, and that when they were worse, she experienced some degree of weakness in her arms and visual changes.[32]  Plaintiff's treating provider noted that she had been treated with extensive conservative management, including the medications Flexeril, Tramadol, Motrin, Aleve, Neurontin, and Cymbalta, as well as extensive physical therapy; of the foregoing treatments, Neurontin and Cymbalta were reported to be somewhat helpful.[33]  Plaintiff's provider stated that he did not find her to have symptoms consistent with migraines, but instead believed that she was suffering from myofascial pain and/or headaches secondary to her Chiari malformation surgery, and that some of her pain was coming from "chronic muscle spasticity of her cervical musculature."[34]  Physical therapy records state that Plaintiff was experiencing dizzy spells and migraine headaches for three days at a time on a weekly basis.[35]

---

[30] SSA R., Doc. 10-9 at 1504.

[31] *Id.* at 634, 951.

[32] *Id.*

[33] *Id.* at 634.

[34] *Id.* at 638, 955.

[35] SSA R., Doc. 10-8 at 474.

As of August 2018, Plaintiff continued to report worsening headaches on an almost daily basis.[36]  Her neurologist added Topamax to her medications in addition to Depakote for headache and seizure prevention, though Topamax was discontinued within a few months due to side effects.[37]  Medical records from October 2018 note that Plaintiff continued to have "chronic headache" and would begin receiving monthly Ajovy injections.[38]  However, it appears that Plaintiff did not start Ajovy injections until February 2019.[39]

In a Third Party Function Report completed in early 2019, a friend of Plaintiff reported that due to her seizures and headaches, Plaintiff appeared to have delayed physical and verbal responses.[40]  And in a headache questionnaire completed in April 2019, Plaintiff reported that she was having one headache per week, or four per month.[41]  She stated that during a headache, she experienced nausea, vomiting, dizziness, vision changes, severe pain, and the inability to move around, and that she had to "sleep it out" in a "dark and silent room."[42]  Plaintiff stated that over-the-counter medications were not effective, that injections had not been helping, and that she could not afford Ajovy injections in any event.[43]

---

[36] SSA R., Doc. 10-9 at 674, 678.

[37] *Id.* at 678, 1003; SSA R., Doc. 10-10 at 1660.

[38] SSA R., Doc. 10-9 at 999, 1003.

[39] SSA R., Doc. 10-10 at 1827.

[40] SSA R., Doc. 10-7 at 322.

[41] *Id.* at 338.

[42] *Id.* at 339.

[43] *Id.*

In May 2019, Plaintiff reported that her headaches had improved with monthly injections—while she was still having four headaches per month, they were not associated with focal neurological deficits or focal weakness.[44]  When Plaintiff sought emergency treatment for a seizure in October 2019, she was noted to have "her typical [headache] like normal."[45]  At some point thereafter, Plaintiff switched to Botox injections for headache management.  As of April 2020, she reported decreased frequency and intensity of her headaches since starting Botox injections.[46]

At the hearing before the ALJ in June 2020, Plaintiff testified that despite receiving 31 to 35 Botox injections in her head, neck, and shoulders to prevent headaches, she is having a breakthrough migraine once every couple of weeks.[47]  She testified that during breakthrough headaches, she takes an additional medication every two hours, which helps with the pain but causes nausea and vomiting and necessitates the use of an additional medication for those side effects.[48]  Plaintiff testified that she has to lock herself in a dark room to avoid sensory input during headaches, which can last from one to two days and have caused her to leave work early "many times."[49]  Plaintiff stated that her headaches feel like "1,000 rubber bands wrapped around [her] skull.  It's squeezing it and then there's numbness and pain shooting throughout my body and my face and then nausea and vomiting and vision impairment, hearing sensitivity, light sensitivity."[50]

---

[44] SSA R., Doc. 10-10 at 2024.

[45] *Id.* at 2062.

[46] *Id.* at 2140.

[47] SSA R., Doc. 10-3 at 46.

[48] *Id.*

[49] *Id.* at 46-47.

[50] *Id.* at 45-46.

**B.**     **The ALJ's Finding that Plaintiff's Headaches Do Not Meet or Equal a Listing Is Not Supported by Substantial Evidence**

Plaintiff contends that the ALJ should have found at step three that Plaintiff's headaches—either alone or in conjunction with her seizure disorder and other ailments—meet or equal listings 11.02B and/or 11.02D.   The Court discusses below the required step three analysis and its application in this case.

**1.**     **Step Three Standard**

When the ALJ finds at step two that the claimant has a severe impairment or combination of impairments, meaning that the impairment(s) significantly limits the claimant's ability to do basic work activities,[51] the ALJ must determine at step three whether that impairment or combination of impairments meets or equals "a condition 'listed in the appendix of the relevant disability regulation.'"[52]  "The Commissioner['s] . . . 'Listing of Impairments' . . . describes certain impairments that she considers disabling."[53]  The medical criteria defining these listed impairments have been "explicitly . . . set . . . at a higher level of severity than the statutory standard," making the listings those that "would prevent an adult, regardless of h[er] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"[54]  Thus, the listings are designed to simplify the decision process by identifying at step three those claimants whose "medical conditions [are] so debilitating as to warrant an automatic presumption of disability without further consideration of the claimant's [RFC] or ability to perform past or

---

[51] 20 C.F.R. §§ 404.1522, 416.922.

[52] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Allen*, 357 F.3d at 1142).

[53] *Jennifer M.A. v. Saul*, 2021 WL 1056426, at *3 (D. Kan. 2021) (citing 20 C.F.R. §§ 404.1525(a), 416.925(a); Pt. 404, Subpt. P, App. 1).

[54] *Id.* (alteration in original) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990)).

other work."[55]  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."[56]

Again, the claimant bears the burden at step three to "present evidence establishing [that] her impairments meet or equal listed impairments."[57]  "An [ALJ] will find that an impairment 'meets the requirements of a listing when it satisfies all the criteria of that listing.'"[58]  "An [ALJ] will find that an impairment is 'medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment.'"[59]  Medical equivalence is determined without consideration of vocational factors such as age, education, and work experience,[60] and can be found in three ways:

> (1)(i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —
>
> (A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or
>
> (B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

---

[55] *Kenneth M. v. Kijakazi*, 2021 WL 4133878, at *3 (D. Utah 2021) (citing *Sullivan*, 493 U.S. at 532).

[56] *Jennifer M.A.*, 2021 WL 1056426, at *3 (quoting *Caviness v. Apfel*, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998)).

[57] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)); *Sullivan*, 493 U.S. at 530.

[58] *Jandt v. Saul*, 2021 WL 467200, at *4 (W.D. Ky. 2021) (quoting 20 C.F. R. § 416.925(c)(3)) (citing *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1984)).

[59] *Id.* (alteration in original) (emphasis added) (quoting 20 C.F.R. § 416.926(a)); *see* 20 C.F.R. § 404.1526(a).

[60] 20 C.F.R. §§ 416.926(c), 404.1526(c).

(ii) [The Administrative Law Judge] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.

(2) If [the Claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments.   If the findings related to [the claimant's] impairment(s) are at least of equal medical significant to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing.

(3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 404.1525(c)(3)), [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments.  If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] combination of impairments is medically equivalent to that listing.[61]

"[T]his regulation allows for variation in the number, type, or severity of the claimant's conditions, so long as the claimant's overall impairment is 'at least of equal medical significance' to a listed impairment."[62]   In determining whether a claimant with a combination of impairments meets or equals a listing, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those deemed severe and non-severe.[63]   However, "[a] claimant

---

[61] *Wilson v. Kijakazi*, 2021 WL 4304700, at *7 (W.D. Ky. 2021) (alteration in original) (quoting 20 C.F.R. § 404.1526(b)) (citing SSR 17-2p); *see* 20 C.F.R. § 416.926(b); *Avery v. Astrue*, 313 F. App'x 114, 122 (10th Cir. 2009).

[62] *Wilson,* 2021 WL 4304700, at *7 (quoting *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 784 (6th Cir. 2017)).

[63] *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("The regulations require that the claimant's impairments be considered in combination 'throughout the disability determination process,' which includes step

cannot qualify for benefits under the 'equivalency' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."[64]  Rather, "[t]o show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."[65]

Although not entirely clear, Plaintiff seems to argue, at minimum, for equivalence under the second method set forth in 20 C.F.R. § 404.1526(b), which applies where an "impairment is closely analogous to, but technically not a listed impairment."[66]  While headaches are not a listed impairment, Plaintiff contends that the ALJ should have found at step three that due to her headaches—either alone or in conjunction with her multiple other impairments—she exhibits equivalent signs and limitations as those detailed in Listing 11.02 for epilepsy.  Plaintiff points to SSR 19-4p, which provides specific guidance on how to determine medical equivalency in cases involving headache disorders and in fact requires that they be evaluated under Listing 11.02, the most closely analogous listing.[67]

---

three." (quoting 20 C.F.R. §§ 404.1523, 416.923) (citing *Hinkle v. Apfel*,132 F.3d 1349, 1353 (10th Cir.  1997))); *Hennigh v. Colvin*, 2016 WL 1298074, at *5 (D. Kan. 2016) (explaining that impairments found to be non-severe at step two must still be considered at later steps in the analysis) (citations omitted)).

[64] *Kerra v. Comm'r of Soc. Sec.*, 2015 WL 6549562, at *2 (D. Md. 2015) (first alteration in original) (quoting *Sullivan*, 493 U.S. at 531).

[65] *Lax*, 489 F.3d at 1085 (citing 20 C.F.R. §§ 404.1525, 416.925); *Kerra*, 2015 WL 6549662, at *2 (stating that "[e]quivalent evidence for each of the criteria must be established").

[66] *Jandt*, 2021 WL 467200, at *5 (citing 20 C.F.R. § 416.926(b)(2)).

[67] SSR 19-4p, 2019 WL 4169635, at *7 (2019); *Jennifer M.A.*, 2021 WL 1056426, at *3; *Jandt*, 2021 WL 467200, at *7.

-14-

SSR 19-4p provides that "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing."[68] As relevant here, SSR 19-4p further provides:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least three consecutive months. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

> Paragraph D of listing 11.02 requires seizures occurring at least once every 2 weeks for at least three consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

"Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all of [the SSA's] components in accordance with 20 CFR 402.35(b)(1) and are binding as

---

[68] SSR 19-4p, 2019 WL 4169635, at *7.

precedents in adjudicating cases."[69]  SSR 19-4p went into effect on August 26, 2019, well before

the date of the ALJ's decision, and "should have been used by the ALJ in making his step-3

determination."[70]

When an ALJ finds that the claimant does not meet or equal a listing at step three, he must

discuss the evidence supporting his decision, the uncontroverted evidence he chose not to rely

upon, and any significantly probative evidence he rejected.[71]

> In the absence of ALJ findings supported by specific weighing of
> the evidence, [the court] cannot assess whether relevant evidence
> adequately supports the ALJ's conclusion that [the claimant's]
> impairments did not meet or equal any Listed Impairment, and
> whether he applied the correct legal standards to arrive at that
> conclusion.[72]

The Tenth Circuit has found that the ALJ's failure to include specific findings at step three

may be harmless error only where he "provides detailed findings at other steps in the analysis that

support the step 3 decision in a readily reviewable manner."[73]  Similarly, although SSR 17-2p

states that the ALJ is not required to articulate specific evidence supporting his finding of no

medical equivalence, and that "[g]enerally, a statement that the individual's impairment[s] does

not medically equal a listed impairment constitutes sufficient articulation for this finding," the

regulation also states that "[a]n adjudicator's articulation of the reason(s) why the individual is or

---

[69] *Phillip v. Saul*, 2020 WL 4001162, at *19 (D. Neb. 2020) (quoting SSR 19-4p, 2019 WL 4169635, at *1).

[70] *Id.*; *see Kathleen H. v. Saul*, 2020 WL 5017760, at *3 (D. Ore. 2020) ("The SSA's policy interpretation SSR 19-4p provides ALJ's [sic] with instructions to determine whether a claimant's migraines are equal in severity and duration to the criteria in 11.02B or D.").

[71] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted).

[72] *Id.* at 1009.

[73] *K.I.*, 2021 WL 4149087, at *7 (citing *Fischer-Ross*, 431 F.3d at 735); *Racette v. Berryhill*, 734 F. App'x 592, 596 (10th Cir. 2018) (citation omitted).

is not disabled at a later step in the sequential evaluation process *will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence* at step 3."[74]

Under these principles, the ALJ's failure to make a specific finding regarding medical equivalence between Plaintiff's headaches and Listing 11.02 at step three is reversible error unless this Court can determine based on the ALJ's overall findings and analysis that his conclusion is supportable.[75]

### 2. The ALJ Fails to Provide Detailed Findings to Support His Step Three Conclusion Regarding Plaintiff's Headaches

The ALJ entirely fails to mention Plaintiff's severe headache impairment in his step three analysis, and nowhere in his decision does he discuss Listing 11.02 in relation to Plaintiff's headaches rather than her seizure disorder.[76]   Although the ALJ makes no findings regarding Plaintiff's headaches at step three, he does briefly discuss them in his RFC analysis.   "RFC represents the most a claimant can do despite his or her limitations or restrictions.   Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities: [i]n an ordinary work setting, [o]n a regulator and continuing basis, and [f]or 8 hours a day, 5 days a week, or an

---

[74] SSR 17-2p, 2017 WL 3928306, at *4 (2017) (emphasis added).

[75] *See, e.g., Shook v. Barnhart*, 2006 WL 2884083, at *3 (D. Kan. 2006) (finding that ALJ erred by failing to analyze, at step three or elsewhere, whether the claimant's signs and symptoms evidenced equivalency to the required criteria of the listing); *Jandt*, 2021 WL 467200, at *9 ("[W]hile an [ALJ] is not required to do so at step three, he or she will provide a sufficient explanation for a court to determine the basis for the unfavorable finding about medical equivalence."); *Santiago Ortiz v. Comm'r of Soc. Sec.*, 2020 WL 5792968, at *3 (W.D.N.Y. 2020) (finding statement at step three that claimant's impairment does not medically equal a listing is generally sufficient, as long as that conclusion is "supported by substantial evidence and . . . articulated elsewhere in the decision in a manner that 'permits a court to understand and review the ALJ's step-three conclusions.'" (quoting *Hall v. Saul*, 2019 WL 5085427, at *8 (N.D. Iowa 2019)) (citing *Owens v. Saul*, 2019 WL 7900070, at *13 (D.S.C. 2019))).

[76] Plaintiff acknowledges that the ALJ considered and rejected Listing 11.02 with respect to her seizures, but contends that the ALJ erred in not conducting the same analysis regarding her headaches.

equivalent work schedule."[77]   Here, the Court examines the ALJ's RFC analysis to consider whether it supplies the necessary findings to support his step 3 decision in a readily reviewable manner.

In the RFC portion of his decision, the ALJ notes that in 2019, weekly migraine headaches were among the symptoms that Plaintiff alleged affected her ability to lift, squat bend, stand, walk, sit, kneel, talk, climb stairs, see, remember, complete tasks, and concentrate.[78]   He notes that Plaintiff testified at the hearing to having debilitating headaches with sensitivity to light and sound.[79]   The ALJ further documents that Plaintiff had been treated with extensive conservative management followed by Ajovy injections, and that a treating provider believed Plaintiff's headaches resulted from chronic muscle spasticity and therefore recommended Botox injections.[80] The ALJ expressly remarked that while Plaintiff's headaches had improved on Botox, Plaintiff still reported having breakthrough migraines once every two weeks lasting up to two days at a time.[81]

Despite the foregoing, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her overall symptoms were not consistent with the medical and other evidence and that she does not "show a persistent pattern of chronic motor, sensory, strength, or reflex deficits reasonably consistent with her allegations."[82]   The ALJ determined that Plaintiff

---

[77] SSA Program Operations Manual System, DI 24510.057, Sustainability and the Residual Functional Capacity (RFC) Assessment, *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510057.

[78] SSA R., Doc. 10-3 at 19.

[79] *Id.*

[80] *Id.* at 21.

[81] *Id.*

[82] *Id.* at 19, 24.

has the RFC to perform a light range of work involving simple, routine, and repetitive task over the course of a 40-hour workweek.  The Commissioner argues that there are multiple sources of evidentiary support for this finding in the record, including the ALJ's reliance on the opinions of state agency medical consultants and a variety of evidence the ALJ found inconsistent with Plaintiff's alleged symptoms.  Plaintiff contends that the ALJ's finding that she has no impairment or combination of impairments that meets or medically equals the severity of any listed impairment is not supported by substantial evidence because his decision lacks discussion of the limitations Plaintiff may experience *while her headaches are occurring* and whether Listing 11.02 may apply. The Court ultimately agrees with Plaintiff.

The Commissioner first argues that medical opinions and prior administrative medical findings support the ALJ's finding that Plaintiff's headaches do not medically equal a listing and that her abilities are consistent with a light range of work.  SSR 17-2p provides that an ALJ may only find medical equivalence when one of three specific kinds of evidence is present in the record: (1) a prior administrative finding from a medical or psychological consultant from the initial or reconsideration adjudication levels supporting the medial equivalence finding; (2) medical expert evidence; or (3) a report from the Appeals Council's medical support staff supporting a finding of medical equivalence.[83]  The Commissioner points out that none of these are present in the record, and that in fact, state agency medical consultants Dr. Pravin Sampat and Dr. Charles Korte considered Plaintiff's headaches but nonetheless found that her impairments did not meet or equal any listing, as evidenced by their signatures on the Disability Determination and Transmittal

---

[83] SSR 17-2p, 2017 WL 3928306, at *3.

Form.[84]   The Court ultimately is unpersuaded by the Commissioner's argument that the ALJ's reliance on the opinions of these non-examining experts provides substantial support for his decision at step three.

"An ALJ may rely on the opinions of state medical consultants, who are highly qualified and whose opinions may be entitled to great weight if the evidence in the record supports them."[85] And in fact, "[a]n ALJ may rely on an opinion of [a] state medical consultant[] even when the consultant did not review all medical records."[86]   When doing so, the ALJ must apply the requirements of 20 C.F.R. § 404.1520c in evaluating the persuasiveness of medical opinions, specifically taking into account supportability, consistency, relationship with the claimant, specialization, and other factors.[87]   However, the ALJ need only articulate how he considered the two most important factors—the supportability and consistency of the opinion.[88]   On appeal, this Court must examine "the ALJ's rationale for finding the medical opinions persuasive or unpersuasive and determine whether it is supported by such relevant record evidence as a reasonable mind might accept as adequate to support a conclusion."[89]

The Disability Determination and Transmittal Form signed by Dr. Sampat does not list headaches as one of the impairments to be considered, and that form's discussion of Plaintiff's

---

[84] SSA R., Doc. 10-4 at 87, 121.

[85] *Jefferson v. Comm'r of Soc. Sec.*, 2019 WL 1417317, at *3 (M.D. Fla. 2019) (citing SSR 96-6p, 1996 WL 362205 (1996), *rescinded by* SSR 17-2p, 2017 WL 3928306 (2017)).

[86] *Id.* (citations omitted).

[87] *Victoria Jean G. v. Kijakazi*, 2021 WL 4168124, at *4 (D. Kan. 2021) (citing 20 C.F.R. § 404.1520c(a), (b)(1)-(2)).

[88] *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)).

[89] *Id.* at *5.

headaches is limited to an excerpt from one of the many medical records discussing Plaintiff's headache history.[90]  That excerpt states, in part: "The patient also has chronic migraines and was given prescription for Ajovy monthly injection but the patient has not started that yet[.]  She still has chronic headaches but no change in nature of the headaches[.]  No change in the pattern[.]  No development of other new focal neurological deficits.  [On examination]: gait nl.  Neuro exam nl. Motor strength nl."[91]   The form then notes that Plaintiff is "[n]ot on preventive meds for migraines."[92]

The Disability Determination and Transmittal Form signed by Dr. Korte a month later states that Plaintiff reported she was "not quite sure why migraines were not initially added to her medical conditions but these need to be added."[93]  The form then documents that in May 2019, Plaintiff "reported chronic headaches and is currently on Ajovy monthly injections.  She felt the severity of the headaches was improving.  She reported 4 headaches per month but were not associated with any focal neuro deficits or weakness."[94]  Finally, the form states that at the time of her May 2019 neurology appointment, Plaintiff's visual fields, facial strength and sensation, motor strength, sensory, and gait were all normal.

---

[90] The Findings of Fact and Analysis of Evidence ("FOFAE") section of the Disability Determination Explanation form is prepared by a disability examiner, not the state agency medical consultant.  "The state agency medical consultant[] merely reference[s] the FOFAEs in making [his] assessments of Plaintiff's 'Medically Determinable Impairments and Severity' and [her] 'Residential Functional Capacity.'" *Phillip*, 2020 WL 4001162, at *22.

[91] SSA R., Doc. 10-4 at 100.

[92] *Id.*

[93] *Id.* at 136.

[94] *Id.*

Drs. Sampat and Korte both found that Plaintiff has abilities consistent with a light range of work.  The ALJ concluded that Dr. Sampat's and Dr. Korte's opinions were generally consistent with and supported by the record, which shows that while Plaintiff has been treated for serious medical issues, she does not have a persistent pattern of chronic motor, sensory, strength, or reflex deficits consistent with her allegations.  Plaintiff argues that the ALJ failed to take into consideration that neither Dr. Sampat nor Dr. Korte ever met or examined Plaintiff and that neither is an expert in Chiari malformations or headache disorders.  Most critically, Plaintiff argues that while the state agency consultants' opinions may be supportable for times when she is not experiencing a headache, neither consultant considered her ability to do work-related activity *while* she is experiencing a headache, which could occur for up to two days every couple of weeks.

The Court agrees that nowhere do the state agency medical consultants (or the ALJ) discuss Plaintiff's functional limitations due to headaches in a manner that permits the Court to find that the ALJ's medical equivalency decision is supported by substantial evidence.  At the hearing level, "[t]he administrative law judge . . . is responsible for deciding the ultimate legal question whether a listing is met or equaled."[95]  The state agency medical consultants on which the ALJ relies do not discuss the requirements of Listing 11.02 in relation to Plaintiff's headaches.  "To assist in evaluating this issue, [the ALJ could have] . . . ask[ed] for and consider[ed] evidence from medical experts."[96]  While the ALJ was not *required* to seek an opinion from a medical expert if he believed the evidence did not reasonably support medical equivalence in Plaintiff's case, this Court

---

[95] *Phillip*, 2020 WL 4001162, at *24; SSR 17-2p, 2017 WL 3928306, at *3.

[96] SSR 17-2p, 2017 WL 3928306, at *3.

still must be able to determine that the ALJ's belief is supported by substantial evidence.[97]  Here, the ALJ's reliance on a finding by state agency medical consultants that Plaintiff's impairments do not meet or equal any listing—without any mention of Listing 11.02 in connection with Plaintiff's headaches by either the ALJ or the medical consultants—is insufficient to allow this Court to conduct meaningful judicial review in this case.[98]

Second, the Commissioner argues that while the ALJ recognized that Plaintiff claims to experience severe, potentially disabling headaches and related symptoms, he found her claims to be inconsistent with other evidence.  Specifically, the ALJ found that Plaintiff's generally normal objective medical evidence, her use of "conservative" treatment to ameliorate her headaches, her part-time work as a convenience store clerk, and her activities of daily living are inconsistent with her claims of disabling symptoms.  As set forth below, the ALJ's findings as to these factors do not supply the substantial evidence this Court must find to affirm his tacit finding that Plaintiff's headaches, either alone or in combination with her multiple other impairments, do not medically equal Listing 11.02.

To begin, the Commissioner argues that if Plaintiff's headaches were as severe as she claims, the medical records would contain abnormal clinical findings to support her allegations, but that the records document normal or only minimally abnormal physical and mental findings.  Contrary to the Commissioner's suggestion, however, Plaintiff is not alleging that her headaches

---

[97] *Phillip*, 2020 WL 4001162, at *25; *McCarthy v. Berryhill*, 2020 WL 2079185, at *4 (D. Colo. 2020)*; Willis v Comm'r of Soc. Sec. Admin.*, 2020 WL 1934932, at *5 (E.D. Mich. 2020).

[98] Given that Plaintiff's headaches are documented in the medical records and were discussed extensively at the hearing, and were determined by the ALJ to be a severe impairment at step two, the Court is unpersuaded by the Commissioner's argument that Plaintiff's counsel failed to structure and present her case in a way that suggested an expert medical opinion on equivalency under Listing 11.02 might be necessary.

cause "*constant*, debilitating pain" such that abnormal findings would be present upon each medical examination.  Rather, she contends that they cause pain and functional limitations *while they are occurring* and that they occur at a frequency and severity that meets the requirements of Listing 11.02, either considered alone or in combination with her other conditions.

"Because the ALJ's 'credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.'"[99]  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[100]  An ALJ's credibility determinations are generally treated as binding on review.[101]  The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[102]

However, notwithstanding the deference generally given to an ALJ's credibility determination, adverse "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[103]  Under 20 C.F.R. § 404.1529(c)(3), the ALJ must consider certain factors in making a credibility determination regarding a claimant's testimony about her symptoms.  These factors include the claimant's daily activities; the location, duration, frequency, and intensity of her pain or other symptoms; the type,

---

[99] *L.T.O. v. Kijakazi*, 2021 WL 4709929, at *4 (D. Kan. 2021) (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009)).

[100] *Wilson v. Astrue*, 602 F.3d 2236, 1144 (10th Cir. 2010) (citation omitted); *Hackett*, 395 F.3d at 1173 (citation omitted).

[101] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[102] *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

[103] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1995)).

dosage, effectiveness, and side effects of medication taken to alleviate symptoms; factors that precipitate or alleviate symptoms; treatment received other than medication; any other measures employed to relieve symptoms; and other factors concerning the claimant's functional limitations and restrictions due to her symptoms.[104]   Further, under SSR 16-3p, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[105]

To the extent that the ALJ discounted Plaintiff's subjective reports of head and body pain, light and sound sensitivity, visual impairment, and nausea and vomiting for up to two days at a time every two weeks, he has failed to discuss the evidence he rejected or chose not to rely upon and whether or why he found Plaintiff lacked credibility as to these reports of *not constant*, but episodic pain and functional limitations.[106]   "While 'the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, . . . a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations.'"[107]   It is error for the ALJ to omit from consideration "portions of the record regarding specific symptoms and/or limitations caused by the headaches [while] . . .

---

[104] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

[105] *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (quoting SSR 16-3p, 2016 WL 1119029, at *9 (2016)).

[106] *Clifton*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citations omitted); *Hamlin*, 365 F.3d at 1217 (citation omitted).

[107] *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (quoting *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987)).

fail[ing] to provide an explanation regarding his apparent rejection of the same."[108]  There may well be good reasons why the ALJ discounted Plaintiff's testimony, but "[h]is credibility analysis should have 'expressly reflected' his consideration and rejection of the claimant's testimony that she suffered pain from her headaches."[109]  While the ALJ notes that Plaintiff alleges "debilitating headaches associated with sensitivity to light and noise" occurring "every couple of weeks" and lasting "up to two days," his decision is unfortunately devoid of any analysis as to why those allegations of *acute* symptoms were discounted.[110]

The Commissioner also argues that Plaintiff's use of only "conservative" treatment for her headaches is inconsistent with her claims of disabling symptoms and supports the ALJ's finding that she is not disabled.  Again, "[t]he type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate [her] pain or other symptoms" is to be considered by an ALJ in evaluating the credibility of the claimant's subjective symptom reports, as is any "[t]reatment, other than medication, [she] receive[s] or [has] received for relief of [her] pain or other symptoms."[111]  As Plaintiff points out, however, the ALJ's statement that the "conservative nature and limited amount of treatment [Plaintiff] has undergone is not supportive

---

[108] *Miller v. Saul*, 2020 WL 3559560, at *4 (W.D. Okla. 2020).

[109] *Veney v. Astrue*, 2009 WL 918474, at *4 (E.D. Okla. 2009) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

[110] SSA R., Doc. 10-3 at 19, 21.  *See, e.g.*, *Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) ("The ALJ erred by failing to discuss the significant evidence of [the claimant's] headaches and how they might impact his functional abilities.").

[111] 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v).

of her allegations of disabling limitations" is not accompanied by a complete discussion of the treatment she has attempted.[112]

In discussing Plaintiff's headaches, the ALJ does not note that she underwent brain surgery to relieve her symptoms, followed by treatment with Flexeril, Tramadol, Motrin, Aleve, Neurontin, Cymbalta, Topamax, and extensive physical therapy.  However, he does seem to acknowledge that prior "extensive conservative management" of Plaintiff's headaches was insufficient—requiring her to try Ajovy and then Botox injections—which belies the Commissioner's argument that Plaintiff's symptom reports lack credibility because she has tried only "conservative" treatments. The ALJ noted that even with injections, Plaintiff reported experiencing a breakthrough migraine every couple of weeks but, again, he engaged in no analysis of Plaintiff's alleged symptoms and limitations *during* headaches and why he did not credit those allegations, which it would seem he was required to discuss somewhere in determining whether Plaintiff's headaches medically equal Listing 11.02.

The ALJ further found that Plaintiff's ability to work part-time as a convenience store clerk and her activities of daily living are inconsistent with her claims of disabling symptoms.  A claimant's prior work record and activities of daily living are relevant to symptom evaluation.[113] The ALJ noted that Plaintiff is able to: (1) generally perform personal care tasks independently (e.g., bathing, dressing, feeding, toileting); (2) cook simple meals, shop, and drive; (3) perform household chores with breaks; and (4) work part-time as a clerk at a gas station.[114]  Thus, the ALJ

---

[112] SSA R., Doc. 10-3 at 21.

[113] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[114] SSA R., Doc. 10-3 at 19.

found that Plaintiff "is more active than [she] would be if all her allegations were consistent" and that "her ability to engage in these activities are not limited to the extent one would expect to associate with disabling physical or mental impairments."[115]

Again, while Plaintiff does necessarily not dispute the accuracy of the ALJ's findings regarding her abilities when she is not experiencing a headache, she argues that he has failed to consider her limitations when suffering from a headache, either alone or in combination with her other impairments. Plaintiff testified that she has been working only 15 to 20 hours per week, and that she has had to leave work many times due to headaches. Notably, the vocational expert testified in response to hypotheticals that a claimant needing to miss two days of work per month, being off task more than 15% of the workday, or requiring unscheduled breaks to deal with symptoms would rule out competitive employment.

Notwithstanding his comment that Plaintiff continues to report breakthrough migraines once every two weeks despite treatment—and Plaintiff's testimony that her headaches can last up to two days; that they cause numbness, face and body pain, vision impairment, and sound and light sensitivity, forcing her remain in a dark room to avoid sensory input; and that her medication for breakthrough headaches causes nausea and vomiting—the ALJ's analysis is devoid of any discussion of whether and for how long Plaintiff may experience functional limitations and/or be unable to report to work during a headache.[116] While the ALJ found Plaintiff not entirely credible,

---

[115] *Id.*

[116] *See, e.g., Otte v. Berryhill*, 2018 WL 5263515, at *5 (D. Kan. 2018) ("The ALJ must explain specifically why he found that Plaintiff's . . . disease attacks will not cause her to miss work one to two days a month on an ongoing basis and are therefore not disabling. He has not done so, and he may not simply disregard Plaintiff's allegations because there are other inconsistencies with the evidence."); *Tate v. Colvin*, 2015 WL 164094, at *8 (N.D. Cal. 2015) (finding remand necessary where vocational expert testified that claimant could not sustain any type of work if he missed three or more days per month because ALJ failed to explain the basis for rejecting physician's opinion that claimant would miss that amount of work); *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015) (same).

-28-

his decision lacks the necessary discussion of the evidence he rejected or chose not to rely upon. Thus, the ALJ's finding that Plaintiff's prior work and activities of daily living are not suggestive of her having significant physical or mental limitations is not sufficiently developed with respect to Plaintiff's headaches for this Court to conduct meaningful review.

Where evidence of record implicates a specific listing, the ALJ must at least evaluate whether the claimant's impairment meets or equals that listing, and "remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."[117]  Here, the ALJ found Plaintiff's headaches to be a severe medically determinable impairment at step two, but then entirely omitted them from his step three analysis, briefly but incompletely discussed them in regard to Plaintiff's RFC, and never mentioned either SSR 19-4p or Listing 11.02 in connection with Plaintiff's headaches.

Admittedly, the evidence does not support that Plaintiff's headaches are frequent enough to medically equal Listing 11.02B, which requires dyscognitive seizures occurring at least once a week for three consecutive months.[118]  However, Plaintiff has offered evidence sufficient to warrant consideration of whether her headaches meet the requirements of Listing 11.02D, which considers the same factors as those set forth in 11.02B with respect to severity and duration and requires a frequency of at least once every 2 weeks for at least three consecutive months despite adherence to prescribed treatment, plus a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or

---

[117] *Phillip*, 2020 WL 4001162, at *23 (citation omitted)

[118] Although Plaintiff argues that her headaches and seizures meet this listing when considered in combination, she had not had a seizure in six months as of the time of the June 2020 hearing.

maintaining pace; or adapting or managing oneself.  While the ALJ did evaluate Plaintiff's functioning under "paragraph B" criteria for her various mental impairments, finding her to have mild to moderate limitations, he conducted no similar analysis regarding her headaches.  Because Plaintiff has offered evidence showing that her headache disorder could equal a listing if properly considered, "the record merits, at minimum, a discussion of how [Plaintiff's] headaches impact those criteria in section 11.00."[119]  Other courts have found error where "the ALJ does not address how [the claimant's] migraine-specific symptoms impact [her] ability to function,"[120] and the Court finds the same here.

"There are . . . numerous decisions which hold that an ALJ's failure to make a specific finding as to medical equivalence between a claimant's chronic headaches and listing 11.02 is reversible error."[121]  Nowhere does the ALJ "address the impact on functioning [under the Listing

---

[119] *Warrior v. Kijakazi*, 2022 WL 336833, at *9 (E.D. Wis. 2022); *see also Jandt*, 2021 WL 467200, at *10 (finding consideration of "paragraph B' findings for claimant's depression failed to address limitations imposed by her headaches).

[120] *Hrycak v. Kijakazi*, 2021 WL 3617863, at *10 (D. Del. 2021) (citing *Jandt*, 2021 WL 467200, at *10).

[121] *Phillip*, 2020 WL 4001162, at  *25 (collecting cases); *see also, e.g.*, *Warrior*, 2022 WL 336833, at *9 ("Here, the ALJ did not . . . discuss Plaintiff's migraine impairment in light of the listing's medical criteria.  The ALJ's decision is devoid of any reasoning to support his determination that Plaintiff's migraine impairment does not medically equal a listing. Consequently, the court is precluded from conducting a meaningful review to determine whether the Commissioner's decision is supported by substantial evidence in the record and based on the proper legal standards."); *Amanda G. v. Kijakazi*, 2022 WL 110280, at *8 (D. Mont. 2022) ("[T]he ALJ did not analyze or mention 11.02.  That omission is error.") (citation omitted)); *Brown v. Kijakazi*, 2021 WL 5356802, at *4 (E.D. Pa. 2021) (stating that "ALJs must analyze migraine/tension headache conditions in a manner akin to epilepsy in their step three analysis") (citation omitted)); *Shulfer v. Kijakazi*, 2021 WL 4317043, at *4 (W.D. Wisc. 2021) ("The ALJ erred by failing to provide any analysis of whether [claimant's] impairment medically equaled Listing 11.02B.") (citation omitted)); *Jones v. Comm'r of Soc. Sec.*, 2020 WL 7029143, at *5 (D. Idaho 2020) ("[A]n ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches were found to be a severe impairment at step two.") (citation omitted)); *Willis*, 2020 WL 1934932, at *6-7 (finding ALJ's failure make even passing reference to listing 11.02 and summary conclusion that claimant's impairments did not meet or equal any listed impairment insufficient to allow judicial review); *Melissa G. v. Saul*, 2019 WL 4392995, at *7-11 (N.D Ill. 2019) (finding ALJ's failure to cite or discuss Listing 11.02 with respect to claimant's migraines required remand where record contained insufficient evidence for the court to find harmless error); *Woolf v. Saul*, 2019 WL 4580037, at *5 (D. Idaho 2019) ("[W]here the ALJ found Petitioner's migraine headaches to be a severe impairment, the Court concludes it was legal error for the ALJ to not to engage in an 11.02 equivalency analysis.") (citation omitted)); *Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988, at *5 (D. Idaho 2018) (same).

11.02D(1)-(5) factors] when Plaintiff experiences a migraine headache" in a manner that allows this Court to confirm that a finding of no medical equivalence is supported.[122]  While expressing no opinion on whether equivalence is met, the Court remands the case to the Commissioner for further proceedings in that regard.  Having found remand necessary at step three, the Court declines to address Plaintiff's other objections to the Commissioner's final decision.  Plaintiff may make those arguments to the ALJ on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be **REVERSED** and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent herewith.

**IT IS SO ORDERED**.

This case is closed.

Dated this 2nd day of March, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[122] *Jandt*, 2021 WL 467200, at *10.